UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| Marissa Carter, Evelyn Grys, Bruce Currier, Sharon Koning, Sue Beehler, Marsha Mancuso, and Jaclyn Cuthbertson, as individuals and as representatives of the classes, | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | Case No.: 6:14-cv-06275 |
| vs. | Jury Trial Demanded |
| HealthPort Technologies, LLC, the Rochester General Hospital, the Unity Hospital of Rochester, and F.F. Thompson Hospital, Inc., | |
| Defendants. | |

---

Plaintiffs Marissa Carter, Evelyn Grys, Bruce Currier, Sharon Koning, Sue Beehler, Marsha Mancuso, and Jaclyn Cuthbertson ("Plaintiffs"), by and through their undersigned counsel, bring this class action for damages and other legal and equitable relief against HealthPort Technologies, LLC ("HealthPort"), the Rochester General Hospital ("RGH"), the Unity Hospital of Rochester ("Unity"), and F.F. Thompson Hospital, Inc. ("FFT") (collectively "Defendants").[1]  Plaintiffs assert the following allegations and make the following claims on behalf of themselves and other similarly-situated class members.[2]

## INTRODUCTION

1.      Plaintiffs and the Class members were overcharged by Defendants for copies of their medical records, in violation of New York law.

---

[1] RGH, Unity, and FFT are referred to herein as the "Health Provider Defendants."

[2] Plaintiffs' proposed class and sub-classes (the "Classes") are set forth in Paragraphs 92-95 of this Class Action Complaint ("Complaint").  Plaintiffs reserve the right to amend their Class definitions, or to propose other or additional classes, in subsequent pleadings and/or their motion for class certification.

2.      Pursuant to New York Public Health Law § 18 and other applicable law, it is unlawful to charge patients and other "qualified persons" who request copies of medical records amounts exceeding the actual costs incurred to produce such records.

3.      Defendants have systematically violated New York law by manipulating charges for medical records, and by charging artificially inflated amounts to Plaintiffs and other Class members.  These artificially inflated amounts exceed the actual cost of producing such records and include built-in kickbacks from HealthPort to the Health Provider Defendants and other health care providers in New York.

4.      Defendants engaged in this conduct in bad faith, knowing that their actions were contrary to New York law, in order to unjustly enrich themselves at the expense of Plaintiffs and other Class members.

5.      Based on Defendants' conduct as described in this Complaint, Plaintiffs assert claims against Defendants for: (1) violation of New York Public Health Law § 18; (2) unjust enrichment; and (3) violation of New York General Business Law § 349 *et seq*.

6.      Plaintiffs and the Classes seek injunctive relief, corresponding declaratory relief, monetary relief, and other appropriate relief for Defendants' unlawful conduct, as described herein.

## PARTIES

7.      Individual and representative Plaintiff Marissa Carter ("Carter") resides in Rochester, New York.  Carter is a member of the HealthPort New York Class and the RGH Sub-Class, as defined below.

8.      Individual and representative Plaintiff Evelyn Grys ("Grys") resides in Albion, New York.  Grys is a member of the HealthPort New York Class and the RGH Sub-Class, as defined below.

9.      Individual and representative Plaintiff Bruce Currier ("Currier") resides in Hamlin, New York.  Currier is a member of the HealthPort New York Class and the RGH Sub-Class, as defined below.

10.      Individual and representative Plaintiff Sharon Koning ("Koning") resides in Rochester, New York.  McCloskey is a member of the HealthPort New York Class and the Unity Sub-Class, as defined below.

11.      Individual and representative Plaintiff Sue Beehler ("Beehler") resides in Hamlin, New York.  Beehler is a member of the HealthPort New York Class and the Unity Sub-Class, as defined below.

12.      Individual and representative Plaintiff Marsha Mancuso ("Mancuso") resides in Rochester, New York.  Mancuso is a member of the HealthPort New York Class and the Unity Sub-Class, as defined below.

13.      Individual and representative Plaintiff Jaclyn Cuthbertson ("Cuthbertson") resides in Honeoye, New York. Cuthbertson is a member of the HealthPort New York Class and the FFT Sub-Class, as defined below.

14.      HealthPort is a for-profit limited liability company that manages and produces medical records for health care providers, including the Health Provider Defendants and other health care providers in New York. Its principal place of business is located at its headquarters in Alpharetta, Georgia.

15.     RGH is a hospital corporation organized and existing under the laws of New York, having its principal place of business located at 1425 Portland Avenue, Rochester, New York, and does business in the State of New York.

16.     Unity is a hospital corporation organized and existing under the laws of New York, having its principal place of business located at 1555 Long Pond Road, Rochester, New York, and does business in the State of New York.

17.     FFT is a hospital corporation organized and existing under the laws of New York, having its principal place of business located at 350 Parrish Street, Canandaigua, New York, and does business in the State of New York.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  Plaintiffs are citizens of the State of New York, and HealthPort is a citizen of a different state.  The amount in controversy in this action exceeds $5,000,000, and there are more than 100 members of each Class.[3]

19.     Venue is proper in the United States District Court, Western District of New York pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside in this District, Defendants conduct business in this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

---

[3] HealthPort is the primary defendant in this case for purposes of 28 U.S.C. § 1332(d)(4)(B).  Within the last three years, HealthPort has been sued in at least one other class action lawsuit involving the same or similar factual allegations.  *See Spiro et al. v. HealthPort Tech. LLC, et al.*, No. 14-cv-2921 (S.D.N.Y.).

## FACTUAL ALLEGATIONS

### *New York Public Health Law § 18 Forbids Excessive Charges for Medical Records*

20.     New York Public Health Law § 18(2)(d) requires that, upon written request by a patient or other qualified person for that patient's medical records, a health care provider must furnish a copy of the patient information requested.

21.     "Qualified person" is defined broadly to include, among other things, any subject of the medical information or attorney representing a qualified person. New York Public Health Law § 18(1)(g)-(h).

22.     New York Public Health Law § 18(2)(e) places two caps on the amount of money that a provider (or a person or entity acting on behalf of a provider) may charge for these records. First, a charge must "not exceed[] the costs incurred by such provider. . . ." Second, "the reasonable charge for paper copies shall not exceed seventy-five cents per page."

23.     This means that a charge for the production of a record can never exceed the **lower** of the actual cost to produce that record or seventy-five cents per page.

### *Defendants' Scheme to Artificially Inflate Charges for Medical Records*

24.     HealthPort has contracts with the Health Provider Defendants and other New York health care providers to (a) respond to requests for medical records, and (b) produce such records to patients and other qualified persons.

25.     HealthPort obtained these contracts by offering improper kickbacks to the Health Provider Defendants and other New York health care providers in connection with revenues associated with charges for medical records.

26.     These kickbacks are a central component of HealthPort's marketing strategy.  For example, there is a section on HealthPorts's website entitled "Informational Resources," http://www.healthport.com/informational-resources.aspx, which provides numerous information

sheets and brochures explaining HealthPort's business model.   On this section of its website,

HealthPort includes a brochure which states that users of its ROI [Release of Information]

Partner service "will gain significant cash flow from the ROI process."  *See* Exhibit 1.  In the

same brochure, HealthPort states that one of the "Features & Benefits" of its service is that it

"Generates revenue" for its clients.  *Id.*

27.    In addition, HealthPort uses revenue generation as a marketing tool on the

"Company              Testimonials"              section              of              its              website,

http://www.healthport.com/company/testimonials.aspx.   *See* Exhibit 2.   On this section of its

website, HealthPort states that it helps clients "boost revenue", and includes the following

testimonial from one client:

> Health Port approached us with their shared services offering, ROI
> Partner. We decided to go with that and it was a win-win situation.
> **Now, we're a revenue generating department**.

*Id.* (emphasis added).

28.    The kickbacks that HealthPort offers to the Health Provider Defendants and other

health care providers in New York are improperly built into the amounts that are charged to

patients and other qualified persons for medical records.

29.    Although the actual cost of providing medical records is far below 75 cents per

page, Defendants have conspired to charge 75 cents per page for medical records, plus an

additional "electronic delivery fee" of $2.00 per request.   The profits are then split between

HealthPort and the Health Provider Defendants (and other health care providers in New York)

via the kickback scheme described above.

30.     These practices (charging fees in excess of actual costs and charging additional fees in excess of 75 cents per page) violate New York Public Health Law § 18, which prohibits such profiteering in connection with requests for medical records.

31.     These practices are also deceptive, misleading, and unlawful, in violation of New York Gen. Bus. Law § 349 *et seq.*

32.     As a result of these practices, Defendants have been unjustly enriched, to the detriment of Plaintiffs and other Class members.

### Plaintiffs' Requests for Medical Records

*Marissa Carter*

33.     Plaintiff Carter was a patient at RGH.

34.     On or about September 5, 2013, Carter requested medical records from RGH through her counsel.

35.     On or about October 1, 2013, HealthPort, acting on behalf of RGH, sent an invoice, which indicated that Carter would be charged $77.00 for 100 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee").

36.     On or about October 7, 2013, Carter paid the $77.00 charge through her counsel in order to obtain copies of the requested medical records.

37.     HealthPort produced these records in paper format, which were printed from electronic files provided by RGH to HealthPort.

38.     The cost to produce these medical records was substantially less than seventy-five cents per page.

39.     The fee charged to, and paid by, Carter exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to RGH.

*Evelyn Grys*

40.     Plaintiff Grys was a patient at RGH.

41.     On or about April 1, 2014, Grys requested medical records from RGH through her counsel.

42.     On or about April 14, 2014, HealthPort, acting on behalf of RGH, sent an invoice, which indicated that Grys would be charged $351.50 for 466 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee").

43.     On or about April 14, 2014, Grys paid the $351.50 charge through her counsel in order to obtain copies of the requested medical records.

44.     HealthPort produced these records in electronic format through an online portal.

45.     The cost to produce these medical records was substantially less than seventy-five cents per page.

46.     The fee charged to, and paid by, Grys exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to RGH.

*Bruce Currier*

47.     Plaintiff Currier was a patient at RGH.

48.     On or about October 12, 2012, Currier requested medical records from RGH through his counsel.

49.     On or about October 31, 2012, HealthPort, acting on behalf of RGH, sent an invoice, which indicated that Currier would be charged $101.75 for 133 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee").

50.     On or about November 11, 2012, Currier paid the $101.75 charge through his counsel in order to obtain copies of the requested medical records.

8

51.     HealthPort produced these records in electronic format through an online portal.

52.     The cost to produce these medical records was substantially less than seventy-five cents per page.

53.     The fee charged to, and paid by, Currier exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to RGH.

*Sharon Koning*

54.     Plaintiff Koning was a patient at Unity.

55.     On or about March 11, 2013, Koning requested medical records from Unity through her counsel.

56.     On or about March 16, 2013, Koning paid $76.25 for 99 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee") through her counsel in order to obtain copies of the requested medical records.

57.     HealthPort produced these records in electronic format through an online portal.

58.     The cost to produce these medical records was substantially less than seventy-five cents per page.

59.     The fee charged to, and paid by, Koning exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to Unity.

60.     On or about May 13, 2013, Koning requested additional medical records from Unity through her counsel.

61.     On or about May 24, 2013, Koning paid $89.00 for 116 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee") through her counsel in order to obtain copies of the requested medical records.

62.     HealthPort produced these records in electronic format through an online portal.

63.     The cost to produce these medical records was substantially less than seventy-five cents per page.

64.     The fee charged to, and paid by, Koning exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to Unity.

65.     On or about December 4, 2013, Koning requested additional medical records from Unity through her counsel.

66.     Later that same month, Koning paid $36.50 for 46 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee") through her counsel in order to obtain copies of the requested medical records.

67.     HealthPort produced these records in paper format, which were printed from electronic files provided by Unity to HealthPort.

68.     The cost to produce these medical records was substantially less than seventy-five cents per page.

69.     The fee charged to, and paid by, Koning exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to Unity.

*Sue Beehler*

70.     Plaintiff Beehler was a patient at Unity.

71.     On or about February 18, 2014, Beehler requested medical records from Unity through her counsel.

72.     On or about February 20, 2014, HealthPort, acting on behalf of Unity, sent an invoice, which indicated that Beehler would be charged $1,109.75 for 1,477 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee").

73.     On or about February 24, 2014, Beehler paid the $1,109.75 charge through her counsel in order to obtain copies of the requested medical records.

74.     HealthPort produced these records in electronic format through an online portal.

75.     The cost to produce these medical records was substantially less than seventy-five cents per page.

76.     The fee charged to, and paid by, Beehler exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to Unity.

*Marsha Mancuso*

77.     Plaintiff Mancuso was a patient at Unity.

78.     On or about January 17. 2013, Mancuso requested medical records from Unity through her counsel.

79.     On or about January 28, 2013, HealthPort, acting on behalf of Unity, sent an invoice, which indicated that Mancuso would be charged $544.25 for 723 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee").

80.     On or about February 5, 2013, Mancuso paid the $544.25 charge through her counsel in order to obtain copies of the requested medical records.

81.     HealthPort produced these records in electronic format through an online portal.

82.     The cost to produce these medical records was substantially less than seventy-five cents per page.

83.     The fee charged to, and paid by, Mancuso exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to Unity.

*Jaclyn Cuthbertson*

84.     Plaintiff Cuthbertson was a patient at FFT.

85.     On or about October 8, 2013, Cuthbertson requested medical records from FFT through her counsel.

86.     On or about October 9, 2013, HealthPort, acting on behalf of FFT, sent an invoice, which indicated that Cuthbertson would be charged $1,109.00 for 1,476 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee").

87.     On or about October 16, 2013, Cuthbertson paid the $1,109.00 charge through her counsel in order to obtain copies of the requested medical records.

88.     HealthPort produced these records in electronic format through an online portal.

89.     The cost to produce these medical records was substantially less than seventy-five cents per page.

90.     The fee charged to, and paid by, Cuthbertson exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to FFT.

## CLASS ACTION ALLEGATIONS

91.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

92.     Plaintiffs assert their claims in Counts 1-4 for violation of New York Public Health Law § 18, unjust enrichment, and violation of New York Gen. Bus. Law § 349 *et seq.* on behalf of a proposed "HealthPort New York Class," defined as follows:

> All patients who requested medical records (either by themselves or through a qualified person acting on their behalf) from a health care provider in the State of New York that contracted with HealthPort Technologies, LLC to produce such records, and were charged on or after May 20, 2008 for such records.

93.     Plaintiffs Carter, Grys, and Currier also assert their claims in Counts 1-4 on behalf of a proposed "RGH Sub-Class," defined as follows:

> All persons in the HealthPort New York Class who were charged on or after May 20, 2008 for medical records from Rochester General Hospital.

94.     Plaintiffs Koning, Beehler, and Mancuso also assert their claims in Counts 1-4 on behalf of a proposed "Unity Sub-Class," defined as follows:

> All persons in the HealthPort New York Class who were charged on or after May 20, 2008 for medical records from Unity Hospital.

95.     Plaintiff Cuthbertson also asserts her claims in Counts 1-4 on behalf of a proposed "FFT Sub-Class," defined as follows:

> All persons in the HealthPort New York Class who were charged on or after May 20, 2008 for medical records from F.F. Thompson Hospital.

96.     <u>Numerosity:</u>   The Classes are so numerous that joinder of all Class members is impracticable. On information and belief, hundreds or thousands of individuals satisfy the definition of each of the Classes.

97.     <u>Typicality:</u>    Plaintiffs' claims are typical of the members of Classes.  Among other things: (1) it was typical for HealthPort to respond to requests for medical records from Plaintiffs and other Class members to the Health Provider Defendants and other health care providers in New York; (2) it was typical for Defendants to charge amounts for medical records in excess of the actual cost of producing such medical records; (3) it was typical for HealthPort to pay kickbacks to the Health Provider Defendants and other health care providers in New York in connection with requests for medical records; (4) it was typical for Defendants to fail to disclose these kickbacks; and (5) it was typical for Defendants to fail to disclose the actual cost of producing medical records.

98.     <u>Adequacy:</u>    Plaintiffs will fairly and adequately protect the interests of the Class members, and have retained counsel experienced in class action litigation and litigation in this District.

99.     <u>Commonality</u>: Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members of the Classes, including but not limited to:

   a.   Whether Defendants charged amounts for medical records in excess of the actual cost of producing such records;

   b.   Whether HealthPort paid kickbacks to the Health Provider Defendants and other health care providers in New York in connection with requests for medical records;

   c.   Whether Defendants' conduct as described herein was deceptive and/or misleading;

   d.   whether Defendants' conduct as described herein violates New York Public Health Law § 18;

   e.   whether Defendants' conduct as described herein violates New York Gen. Bus. Law § 349 *et seq.*;

   f.   whether Defendants were unjustly enriched by the conduct described in this Complaint;

   g.   the appropriateness and proper form of any declaratory or injunctive relief; and

   h.   the appropriate measure of monetary relief.

100.    This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Classes as a whole.

101.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendants' conduct described in this Complaint stems from common and uniform policies and practices, resulting in improper charges for medical records that are readily calculable from Defendants' records and other class-wide evidence. Members of the Classes do not have an interest in pursuing separate individual actions against Defendants, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants' practices. Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single action.

102.     Plaintiffs intend to send notice to all members of the Classes to the extent required by Rule 23. The names and addresses of the Class members are available from Defendants' records.

### FIRST CLAIM FOR RELIEF
### VIOLATION OF NEW YORK PUBLIC HEALTH LAW § 18
**(Asserted against all Defendants by all Plaintiffs and Classes)**

103.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

104.     Defendants were required to adhere to the requirements of New York Public Health Law § 18 when providing medical records to Plaintiffs and other Class members.

15

105. New York Public Health Law § 18(2)(e) only allows a health care provider (or a party acting on a provider's behalf) to "impose a reasonable charge for all inspections and copies, ***not exceeding the costs incurred by such provider*** ..." (emphasis added).

106. In addition, New York Public Health Law § 18(2)(e) separately and independently provides that a health care provider (or a party acting on a provider's behalf) may not charge in excess of 75 cents per page for medical records, regardless of the actual cost of producing such records.

107. Defendants violated New York Public Health Law § 18 by, among other things:

    a.    Charging amounts in excess of the cost to produce medical records;

    b.    Imposing add-on charges (e.g., electronic delivery fees) resulting in total charges in excess of 75 cents per page for medical records; and

    c.    Building improper kickbacks and profits into the amounts charged for medical records.

108. Defendants systematically engaged in these illegal practices to the detriment of Plaintiffs and other Class Members.

109. Plaintiffs and other Class members have been injured and suffered a monetary loss as a result of Defendants' violations of New York Public Health Law § 18.

110. As a result of Defendants' violations of New York Public Health Law § 18, Plaintiffs and the Classes are entitled to, *inter alia*, recovery of their actual damages and any other remedies afforded at law or in equity.

## SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
**(Asserted against RGH by Carter, Grys, Currier, and the RGH Sub-Class)**
**(Asserted against Unity by Koning, Beehler, Mancuso, and the Unity Sub-Class)**
**(Asserted against FFT by Cuthbertson and the FFT Sub-Class)**

111.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

112.    The Health Provider Defendants have been unjustly enriched as a result of the conduct described in this Complaint.

113.    The Health Provider Defendants received a benefit from Plaintiffs and other Class members in the form of payments for medical records ("Medical Record Payments"). Specifically:

> a.    FFT received Medical Record Payments from Plaintiff Cuthbertson and the FFT Sub-Class;

> b.    RGH received Medical Record Payments from Plaintiffs Carter, Grys, Currier, and the RGH Sub-Class; and

> c.    Unity received Medical Record Payments from Plaintiffs Koning, Beehler Mancuso, and the Unity Sub-Class.

114.    The Health Provider Defendants retained a portion of these payments in the form of improper kickbacks or other compensation from HealthPort.

115.    Retention of these payments by the Health Provider Defendants would be unjust and inequitable because (among other things):

> a.  New York law prohibits profiteering in connection with requests for medical records;

b.  The Health Provider Defendants conspired with HealthPort to manipulate the amount charged for medical records and artificially inflate those charges in excess of the actual cost to produce such records, in order to receive kickbacks from HealthPort;

c.  The Health Provider Defendants conspired with HealthPort to impose add-on charges (e.g., electronic delivery fees) resulting in total charges in excess of 75 cents per page for medical records;

d.  Defendants' kickback scheme was not disclosed to Plaintiffs or other Class members;

e.  The actual cost of producing medical records was not disclosed to Plaintiffs or other Class members; and

f.  The conduct of the Health Provider Defendants (as described in this Complaint) was willful and knowingly unlawful.

116.   The kickbacks and/or other compensation that the Health Provider Defendants retained were not legitimately earned, and came at the ultimate expense of Plaintiffs and other Class members.

117.   Plaintiffs and the Classes are entitled to restitution and disgorgement of all monies unjustly and inequitably retained by the Health Provider Defendants in connection with requests for medical records.  The Health Provider Defendants cannot retain these payments in good conscience.

**THIRD CLAIM FOR RELIEF**
**UNJUST ENRICHMENT/RESTITUTION/DISGORGEMENT**
**(Asserted against HealthPort by all Plaintiffs and Classes)**

118.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

119.     HealthPort has been unjustly enriched as a result of the conduct described in this Complaint.

120.     HealthPort received a benefit from Plaintiffs and other Class members in the form of Medical Record Payments.

121.     HealthPort retained these payments, except for the portion that was kicked back to the Health provider Defendants and other health care providers in New York.

122.     Retention of the full amount of these payments by HealthPort would be unjust and inequitable because (among other things):

    a.  New York law prohibits profiteering in connection with requests for medical records;

    b.  HealthPort conspired with the Health Provider Defendants and other health care providers in New York to manipulate the amount charged for medical records and artificially inflate those charges in excess of the actual cost to produce such records;

    c.  HealthPort conspired with the Health Provider Defendants to impose add-on charges (e.g., electronic delivery fees) resulting in total charges in excess of 75 cents per page for medical records;

    d.  HealthPort offered and paid improper kickbacks to the Health Provider Defendants and other health care providers in New York in order to obtain their

business and their approval to charge artificially inflated amounts for medical records;

e.  Defendants' kickback scheme was not disclosed to Plaintiffs or other Class members;

f.  The actual cost of producing medical records was not disclosed to Plaintiffs or other Class members; and

g.  HealthPort's conduct (as described in this Complaint) was willful and knowingly unlawful.

123.  The artificially inflated payments that HealthPort retained were not legitimately earned, and came at the ultimate expense of Plaintiffs and other Class members.

124.  Plaintiffs and the Classes are entitled to restitution and disgorgement of all monies unjustly and inequitably retained by the HealthPort in connection with requests for medical records.  HealthPort cannot retain these payments in good conscience.

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF N.Y. GEN. BUS. LAW § 349 *et seq.***
**(Asserted against all Defendants by all Plaintiffs and Classes)**

125.  Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

126.  Defendants are required to adhere to the requirements of the NYDPA in connection with their acts and practices relating to requests for medical records in New York.

127.  The NYDPA provides that "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state are hereby declared unlawful."

128.   Defendants have pervasively violated the NYDPA, and continue to violate the NYDPA, by engaging in the deceptive, misleading, and unlawful acts and practices described in this Complaint.

129.   Among other things, Defendants violated the NYDPA by:

    a.   Conspiring to manipulate the amount charged for medical records and artificially inflate those charges in excess of the actual cost to produce such records;

    b.   Failing to disclose the actual cost to produce medical records;

    c.   Deceptively and unlawfully charging amounts in excess of the actual cost to produce medical records;

    d.   Engaging in a secret and improper kickback scheme in connection with requests for medical records;

    e.   Failing to disclose their kickback scheme to Plaintiffs and other Class members; and

    f.   Charging unlawful add-on fees for medical records, in the guise of "electronic delivery fees," in an attempt to circumvent the statutory maximum under New York law and further inflate the amounts charged.

130.   Defendants engaged in these acts and practices for the purpose of (a) deceiving Plaintiffs and other Class members regarding the actual cost of producing medical records; (b) improperly attempting to circumvent New York General Health Law § 18 and other applicable law; (c) overbilling Plaintiffs and other Class members by charging them excessive and unlawful amounts for copies of their medical records; and (d) improperly extorting unearned payments from Plaintiffs and other Class members for medical records.

131.    Defendants systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiffs and other Class members.

132.    Defendants willfully engaged in such acts and practices, and knew that they violated the NYDPA or showed reckless disregard for whether they violated the NYDPA.

133.    The harm caused by these acts and practices vastly outweighs any legitimate utility they possibly could have.

134.    As a result of Defendants' violations of the NYDPA, Plaintiffs and the Classes have been injured and have suffered actual damages and monetary losses in the form of excessive charges for medical records.

135.    Plaintiffs and the Classes are entitled to actual damages, statutory damages, treble damages, injunctive relief, attorneys' fees and costs and expenses, and any other remedies available under the NYDPA or in equity, for Defendants' violations of the NYDPA.  *See* N.Y. Gen. Bus. Law § 349(h).

## PRAYER FOR RELIEF

136.    WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, pray for relief:

    a.    Determining that this action may proceed as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure;

    b.    Appointing Plaintiffs as representatives of the Classes that they seek to represent;

    c.    Designating Plaintiffs' counsel as counsel for the Classes;

    d.    Issuing proper notice to the Classes at Defendants' expense;

    e.    Declaring that Defendants' actions as described above violate New York Public Health Law § 18;

f.      Declaring that Defendants' actions as described above violate New York General Business Law § 349 *et seq*.;

g.      Declaring that Defendants were unjustly and unlawfully enriched at the expense of Plaintiffs and the Class members;

h.      Awarding appropriate equitable relief, including but not limited to an injunction prohibiting Defendants from charging amounts in excess of the actual cost to produce medical records; prohibiting Defendants from charging add-on fees (including but not limited to "electronic delivery fees") resulting in total charges for medical records in excess of actual costs or 75 cents per page; prohibiting Defendants from offering or accepting kickbacks or other unearned compensation in connection with requests for medical records; and ordering Defendants to cease and desist from engaging in further unlawful conduct in the future;

i.      Awarding actual damages and/or statutory damages to Plaintiffs and the Classes;

j.      Awarding treble damages as permitted under New York Gen. Bus. Law § 349 *et seq*.;

k.      Awarding prejudgment interest to Plaintiffs and the Classes;

l.      Awarding reasonable attorneys' fees and costs and expenses to the extent permitted by New York Gen. Bus. Law § 349 *et seq*. and other applicable law; and

m.      Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

137.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the

Classes demand a trial by jury.


Dated: May 20, 2014                      **FARACI & LANGE LLP**


BY: s/Stephen G. Schwarz
       Stephen G Schwarz, NY Bar #2008936
       Kathryn Lee Bruns, NY Bar #2874063
       28 E. Main Street, Suite 1100
       Rochester, NY  14614
       Telephone: (585) 325-5150
       Fax: (585) 325-3285
       sschwarz@faraci.com
       kbruns@faraci.com


**NICHOLS KASTER, PLLP**
       Kai H. Richter, MN Bar #0296545*
       E. Michelle Drake, MN Bar #
       David J. Carrier, MN Bar #0393582*
       *Pro hac vice* applications forthcoming
       4600 IDS Center
       80 South Eighth Street
       Minneapolis, MN 55402-2242
       Telephone: 612-256-3200
       Facsimile: 612-338-4878
       krichter@nka.com
       drake@nka.com
       dcarrier@nka.com


ATTORNEYS FOR PLAINTIFFS AND THE CLASSES