UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARISSA CARTER, EVELYN GRYS,
BRUCE CURRIER, SHARON KONING,
SUE BEEHLER, MARSHA MANCUSO, and
JACLYN CUTHBERTSON,
as individuals and as representatives
of the classes,

                     Plaintiffs,

                                                   Case # 14-CV-6275-FPG

v.

                                                   DECISION AND ORDER


HEALTHPORT TECHNOLOGIES, LLC,
THE ROCHESTER GENERAL HOSPITAL,
THE UNITY HOSPITAL OF ROCHESTER, and
F.F. THOMPSON HOSPITAL, INC.,

                     Defendants.

## INTRODUCTION

       This case is a putative class action lawsuit filed on behalf of individuals in New York

State who requested copies of their medical records from HealthPort Technologies, LLC

("HealthPort"), Rochester General Hospital ("RGH"), Unity Hospital of Rochester ("Unity"),

and F.F. Thompson Hospital, Inc. ("FFT") (collectively, "Defendants").   Plaintiffs allege that

Defendants overcharged them for making copies of the requested records, and bring claims for

money damages under New York Public Health Law § 18, which sets a ceiling on such fees;

under New York General Business Law § 349, which prohibits deceptive trade practices; and for

unjust enrichment.

       On June 19, 2014 and July 21, 2014, Defendants moved, in separate motions, to dismiss

the Complaint (ECF Nos. 9, 20, 21) under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6), arguing that the Plaintiffs lack standing to bring this action, and further, that the Complaint fails to state a claim upon which relief may be granted. For the following reasons, the Motions are granted, and the Complaint is dismissed.

## BACKGROUND

The named Plaintiffs in this case – Marissa Carter, Evelyn Grys, Bruce Currier, Sharon Koning, Sue Beehler, Marsha Mancuso, and Jaclyn Cuthbertson – seek to represent a class of similarly situated individuals who, according to the Complaint, were overcharged for copies of medical records from the named Defendants. In short, the Plaintiffs allege that the Defendants charged a blanket rate of $0.75 per page for copies of their medical records, when New York Law requires them to only charge their actual expenses, but in no event can those expenses be more than $0.75 per page. Plaintiffs further allege that certain unauthorized "delivery charges" were added on top of the copying costs, and allege that all of these excessive costs were devised and charged as part of a scheme between the Defendants to artificially generate profits.

The requests for medical records by the Plaintiffs from the Defendants and the payment for these records are at the heart of the Complaint, and the allegations regarding those requests and payments take the same form for each of the seven Plaintiffs. For example, regarding Plaintiff Carter, the Complaint alleges that:

> Plaintiff Carter was a patient at RGH. ECF No. 1, ¶ 33. On or about September 5, 2013, Carter requested medical records from RGH through her counsel. ECF No. 1, ¶ 34. On or about October 1, 2013, HealthPort, acting on behalf of RGH, sent an invoice, which indicated that Carter would be charged $77.00 for 100 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee"). ECF No. 1, ¶ 35. On or about October 7, 2013, Carter paid the $77.00 charge through her counsel in order to obtain copies of the requested medical records. ECF No. 1, ¶ 36.

Regarding Plaintiff Mancuso, the Complaint similarly alleges that:

> Plaintiff Mancuso was a patient at Unity.  ECF No. 1, ¶ 77.  On or about January 17. 2013, Mancuso requested medical records from Unity through her counsel.  ECF No. 1, ¶ 78.  On or about January 28, 2013, HealthPort, acting on behalf of Unity, sent an invoice, which indicated that Mancuso would be charged $544.25 for 723 pages of medical records ($0.75 per page, plus a $2.00 "Electronic Dlvry Fee").  ECF No. 1, ¶ 79.  On or about February 5, 2013, Mancuso paid the $544.25 charge through her counsel in order to obtain copies of the requested medical records.  ECF No. 1, ¶ 80.

The Complaint makes the same allegations for each of the seven named Defendants, although the dates and overall amounts are unique to each Defendant.  Further, while each Plaintiff makes claims against HealthPort for ultimately providing the records, Plaintiffs Carter, Grys, and Currier make claims against RGH, whom they made their requests through, Plaintiffs Koning, Beehler, and Mancuso make claims against Unity, whom they made their requests through, and Plaintiff Cuthbertson make her claim against FFT, whom she made her request through.  ECF No. 1.  Based upon these record requests and the resultant charges, each Plaintiff alleges that the fees charged "exceeded the cost to produce these medical records, and included a built-in kickback from HealthPort to [the relevant hospital]."  ECF No. 1, ¶¶ 39, 46, 53, 59, 64, 69, 76, 83, 90.  As such, they claim to have suffered damages from paying amounts in excess of the actual cost to produce the requested medical records.  ECF No. 1, ¶¶ 107, 109.

In lieu of answering the Complaint, each of the Defendants has filed a Motion to Dismiss.  ECF Nos. 9, 20, 21.  The Plaintiffs have responded to each of the Motions (ECF Nos. 26, 27, 28), and the Defendants have filed their replies.  ECF Nos. 33, 34, 35.  In addition, the Court

received a letter brief from Plaintiffs' counsel on September 3, 2014, which I have filed on the public docket. ECF No. 36. As such, the Motions are fully briefed and ripe for decision.

DISCUSSION

Because it is jurisdictional, I must first consider the Defendants' argument that the Plaintiffs lack standing to bring this case. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir.1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (citation omitted).

"[A] claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("Generally, '[s]tanding is a federal jurisdictional question determining the power of the court to entertain the suit.'") (quoting *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010)). "[A] plaintiff must demonstrate standing for each claim and form of relief sought." *Mahon*, 683 F.3d at 62 (citation omitted).

"Article III standing consists of three 'irreducible' elements: (1) *injury-in-fact,* which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the

4

defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief."   *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)) (emphasis in original).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists."   *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113).  In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006), but "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998);  *see also APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits.  *See Makarova*, 201 F.3d at 113.

Here, the Defendants argue that the Plaintiffs lack standing to bring the claims they have alleged in their Complaint.  When standing is put at issue, "[e]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Carver*, 621 F.3d at 225 (alterations in original) (citing *Lujan*, 504 U.S. at 561).   "Because standing is challenged [here]  on the basis of the pleadings, we [therefore] accept as true all material allegations of the  complaint, and must construe the complaint in favor of the complaining party."   *Id.* at 225 (alterations in original) (quoting *W.R. Huff*, 549 F.3d at 106).

More specifically, the Defendants argue that the Plaintiffs have failed to plead a cognizable injury-in-fact, because it was their lawyers who ordered, were charged for, and paid for the copies of the medical records at issue.  As such, the Defendants contend that any overcharging – if there was any – did not cause any injury-in-fact to the individual Plaintiffs.

In response, the Plaintiffs claim that who exactly ordered and paid for their clients records is irrelevant.  Specifically, they argue that "[f]or purposes of the claims at issue, it makes no difference whether Plaintiffs requested their records themselves or through counsel. In either case, the client-patient is the real party in interest."  ECF No. 26, at 15.

In my view, the Plaintiffs have failed to establish standing to bring this suit.  In making this determination, I find persuasive Judge Engelmayer's recent decision in *Spiro v. HealthPort Technologies, LLC,* --- F. Supp. 3d ----, No. 14 Civ. 2921(PAE), 2014 WL 4277608 (S.D.N.Y. Aug, 29, 2014).  The basic facts and premise of the claims in *Spiro* are virtually identical to the present case.  In *Spiro*, a group of individual plaintiffs brought a potential class action suit against HealthPort (the same entity named in the present case) and three hospitals in the New York City area, alleging that the hospitals and HealthPort overcharged them for their medical records.  The *Spiro* plaintiffs alleged that the defendants charged $0.75 per page for copies of their medical records, as opposed to charging their actual costs, which was allegedly in violation of New York Public Health Law Section 18.  The *Spiro* Plaintiffs additionally alleged that the defendants engaged in deceptive trade practices, and brought a claim for unjust enrichment.  The defendants moved to dismiss the complaint on several bases, including lack of standing.  More specifically, the defendants argued that because the records at issue were requested by and paid for the plaintiffs' attorneys, the named plaintiffs had alleged no injury-in-fact, and therefore lacked standing.

In granting the defendants' motion to dismiss, Judge Engelmayer wrote:

> On the facts pled in the [Complaint], defendants are correct. The [Complaint] does not plead that any plaintiff was obligated to reimburse [their counsel] for the copying costs he incurred. Instead, on the facts as pled, the decision by plaintiffs to reimburse [their counsel], after the fact, for the copying costs he had paid was a volitional act—an act of grace. As pled, plaintiffs never dealt directly with Healthport. Nor, based on the [Complaint], had they any obligation to reimburse [their counsel] for his outlay at the time he ordered the photocopies. On these facts, any legal right to challenge defendants' ostensible overcharging would belong exclusively to [their counsel], as it was [their counsel], and [their counsel] alone, who suffered an injury *caused* by defendants' overcharging. Plaintiffs' later decision to reimburse their lawyer, and [counsel's] decision to accept such reimbursement, must be taken as independent, volitional, discretionary acts, breaking the chain of causation necessary to establish Article III standing. *See Lujan,* 504 U.S. at 560–61 ("[T]here must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and *not the result of the independent action of some third party* not before the court.") (internal quotation marks and alterations omitted) (emphasis added).
>
> Indeed, plaintiffs' theory that a discretionary decision after-the-fact to reimburse another party for a charge confers standing on the reimbursing entity would vastly broaden Article III standing. Imagine, for example, a person who took a taxi home one night, and was overcharged for the taxi ride in violation of local law. If the person was later voluntarily reimbursed for that cost—by a friend, parent, employer, stranger, or Good Samaritan—that reimbursing entity would then, on plaintiff's theory, have the legal right to sue the cab driver for overcharging. There is no authority for this claim. Absent assignment of a legal right to sue for such relief, which is not alleged here, the mere act of making a third-party whole for an expense incurred and already paid does not entitle the paying party to the right to challenge that expense.
>
> To be sure, the analysis would be different if plaintiffs had been obligated at the time that [their counsel] incurred the copying expenses to reimburse [him] for the expenses he incurred in connection with representing them. In that circumstance, whether plaintiffs' reimbursement duty was absolute or conditioned on a settlement or verdict in their favor, *then* Healthport's charge to [counsel] for copying and [counsel's] payment of that charge

would have given rise to a liability (or a contingent liability) on plaintiffs' part. That liability, to repay [counsel] for the copying expenses, would have given plaintiffs standing to challenge the copying cost as excessive, because plaintiffs would then have suffered an injury-in-fact (a legal duty to pay these excessive costs) traceable to the defendants responsible for the charges. *See Roman Catholic Archdiocese of N.Y. v. Sebelius,* 907 F.Supp.2d 310, 329 (E.D.N.Y. 2012) ("[N]umerous cases have also recognized that uncertain future harms can have present effects that are sufficient for standing purposes.") (collecting cases); *see also Clinton v. City of N.Y.,* 524 U.S. 417, 431 (1998) (New York had standing to challenge the line item veto, even though a pending administrative action could waive the contingent liability, because "[t]he revival of a substantial contingent liability immediately and directly affects the borrowing power, financial strength, and fiscal planning of the potential obligor"); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,* 422 F.3d 490, 498 (7th Cir. 2005) (plaintiff had standing to bring suit because "the present impact of a future, though uncertain harm may establish injury for standing purposes"). The [Complaint], however, does not allege that there was any such agreement in place between plaintiffs and [their counsel] at the time [counsel] incurred the copying expense under which plaintiffs would reimburse [counsel] for the costs it incurred in the course of representing plaintiffs in their lawsuits. The [Complaint] is silent on that point.

This pleading deficiency should be easily corrected, if the facts so permit. In New York State, an attorney is required to "provide to the client a written letter of engagement before commencing the representation, or within a reasonable time thereafter[.]" *See* N.Y. Comp.Codes R. & Regs. tit. 22, § 1215.1. The engagement letter must explain (1) the scope of the legal services to be provided; and (2) the "attorney's fees to be charged, expenses and billing practices." *Id.* It follows that, if plaintiffs were obligated to reimburse [counsel] for expense outlays, including in obtaining plaintiffs' medical records, then [counsel's] engagement letter with each plaintiff should reflect such a term.

Each of Counts One, Two, and Three turns on the claim that defendants overcharged [counsel] for copies of plaintiffs' medical records. Because the [Complaint] does not assert facts on which plaintiffs have standing to pursue such a claim, the Court dismisses these three damages claims for lack of subject matter jurisdiction.

*Spiro,* 2014 WL 4277608, at *5-6. (Footnotes omitted).

For those same reasons, I find that the Complaint in this action fails to establish the Plaintiffs' standing to bring this suit. There is no plausible allegation in the Complaint to establish that it was Plaintiffs – as opposed to their counsel – who requested the copies or paid the resulting bill and therefore bore the alleged injuries in this case, and without such an allegation in the Complaint, the Plaintiffs have failed to establish their standing to sue.

Plaintiffs' letter to the Court of September 2, 2014 correctly stated that the *Spiro* litigation was "discussed at length in HealthPort's motion to dismiss and Plaintiffs' response to HealthPort's motion." ECF No. 36. Indeed, that letter acknowledged that "[t]he **only** reason that the plaintiffs' claims against HealthPort were dismissed in *Spiro*… was because the court concluded that the plaintiffs had not pled that they were ultimately responsible for the charges, which were paid by their attorneys, at the time such charges were incurred." *Id.* (emphasis in original).

While Plaintiffs' counsel argues that *Spiro* was wrongly decided, they also informed this Court that "there is no reason to dismiss Plaintiffs' claims for lack of standing, and *it would be a waste of time to require them to plead their claims in further detail.*" *Id.* (emphasis added). While this Court is not required to offer counseled Plaintiffs the opportunity to amend their Complaint – indeed, it is counsel's job to determine whether to seek leave to amend or not, and to make such a request, if counsel deems it appropriate – in this case, I see even less reason to offer the Plaintiffs, *sua sponte,* the opportunity to amend their Complaint, since they have informed the Court in writing that doing so would "be a waste of time."

<u>CONCLUSION</u>

For all of the foregoing reasons, the Plaintiffs have failed to establish their standing to sue

in this case, and the Defendants' Motions to Dismiss (ECF Nos. 9, 20, 21), are GRANTED.  This

matter is dismissed with prejudice, and the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  March 31, 2015
        Rochester, New York

/s/ Frank P. Geraci, Jr.
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court