UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARISSA CARTER, EVELYN GRYS,
BRUCE CURRIER, SHARON KONING,
SUE BEEHLER, MARSHA MANCUSO,
JACLYN CUTHBERTSON, *as individuals and as
representatives of the classes*,

                               Plaintiffs,

v.

                               Case # 14-CV-6275-FPG

                               DECISION AND ORDER

CIOX HEALTH, LLC, *f/k/a HealthPort
Technologies, LLC*, ROCHESTER GENERAL
HOSPITAL, UNITY HOSPITAL OF ROCHESTER,
F.F. THOMPSON HOSPITAL, INC.,

                               Defendants.

## INTRODUCTION

Marissa Carter, Evelyn Grys, Bruce Currier, Sharon Koning, Sue Beehler, Marsha Mancuso, and Jaclyn Cuthbertson ("Plaintiffs") brought this putative class action lawsuit on behalf of individuals in the State of New York who requested copies of their medical records from CIOX Health, LLC, Rochester General Hospital, Unity Hospital of Rochester, and F.F. Thompson Hospital, Inc. ("Defendants"). ECF No. 48. Plaintiffs allege that Defendants overcharged them for copies of medical records in violation of New York Public Health Law ("NYPHL") § 18 and New York General Business Law ("NYGBL") § 349. *Id.* Plaintiffs also allege unjust enrichment. *Id.* Plaintiffs assert that this Court has jurisdiction over these claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

Defendants have moved to dismiss Plaintiffs' Amended Complaint. ECF No. 52. First, Defendants argue that the Court lacks jurisdiction because this case falls into an exception to CAFA jurisdiction. *See* ECF No. 52-1 at 4-8. Second, Defendants argue that Plaintiffs lack standing to seek injunctive relief. *See id.* at 10. Third, Defendants argue that a three-year statute of limitations applies to Plaintiffs' claims and any claim stemming from a transaction that occurred more than three years before Plaintiffs initiated this case must be dismissed. *See id.* at 15. Finally, Defendants argue that Plaintiffs' claims should be dismissed under the voluntary payment doctrine. For the reasons discussed below, the Court grants Defendants' Motion to Dismiss in part and denies it in part.

## BACKGROUND

Defendants Rochester General Hospital, Unity Hospital of Rochester, and F.F. Thompson Hospital are New York healthcare providers. *Id.* at ¶¶18-20. Defendant CIOX Health[1] contracted with these and other healthcare providers to obtain, copy, and distribute patient medical records. *Id.* at ¶ 27. New York Public Health Law requires healthcare providers to provide their patients with copies of their medical records in exchange for an amount not exceeding the costs of producing the documents. *See* N.Y. PUB. HEALTH LAW § 18 (MCKINNEY 2010). The law also requires that the costs not exceed $0.75 per page. *Id.* Plaintiffs allege that Defendants charged them "artificially inflated amounts" that exceeded both the cost of producing the records and $0.75 per page. *See* ECF No. 48 at ¶ 3.

Between October 12, 2012 and April 14, 2014, each named Plaintiff requested medical records from one of the Defendant healthcare providers. *Id.* at ¶¶ 36-93. In doing so, each Plaintiff wrote to their healthcare provider and offered to "promptly reimburse [them] for any

---

[1] On March 1, 2016, HealthPort Technologies, LLC changed its name to CIOX Health, LLC. *See* ECF No. 48 at ¶ 15. CIOX Health is an unincorporated association whose individual members are citizens of states other than New York. *Id.* at ¶ 17.

copying expense not exceeding 75 cents per page." ECF No. 20-3. Following each request, Defendant CIOX Health sent each Plaintiff an invoice indicating that each Plaintiff would be charged $0.75 per page plus a $2.00 delivery fee for the production of the records. ECF No. 48 at ¶¶ 36-93. Each Plaintiff paid the amount requested, and Defendant CIOX Health produced the records. *Id.* Plaintiffs allege that, in each case, the amount charged exceeded the cost to produce the documents and, with the $2.00 delivery fee, exceeded $0.75 per page. *Id.*

Plaintiffs allege that Defendants charged these excessive amounts systematically. Although the actual cost of providing the medical records was far below $0.75 per page, Plaintiffs allege, Defendants charged $0.75 per page and an additional $2.00 per request in order to generate revenue for both Defendant CIOX and the Defendant healthcare providers. *Id.* at ¶¶ 27-32. Plaintiffs allege that Defendant CIOX Health calculated these charges to include an amount to "kick back" to the Defendant healthcare providers. *Id.* Indeed, Plaintiffs allege that the contracts between the Defendants included a provision that required Defendant CIOX Health to pass a portion of the excess revenue that it received back to the Defendant healthcare providers. *Id.* On that basis, in addition to asserting violations of NYPHL § 18, Plaintiffs claim Defendants' practices were deceptive in violation of NYGBL § 349 and that Defendants were unjustly enriched by this scheme. *Id.* at ¶¶ 106-38.

## DISCUSSION

Defendants have moved to dismiss Plaintiffs' Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF No. 52-1 at 1. Where a motion to dismiss is made under Rule 12(b)(1) on the ground that the court lacks subject matter jurisdiction, the court should consider the Rule 12(b)(1) challenge before considering any accompanying objections or defenses. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir.

1990) (quoting CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2013) ("[W]hen the motion [to dismiss] is based on more than one ground, the cases are legion stating that the district court should consider the Rule 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined by the judge.")).

To succeed on a motion to dismiss brought under Rule 12(b)(6), the defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A complaint is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of

truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (internal quotation marks omitted).

I. **Local Controversy Exception to Class Action Fairness Act Jurisdiction**

Defendants argue that the Court must dismiss this case because it falls into a mandatory exception to the Class Action Fairness Act ("CAFA").[2] *See* ECF No. 52-1 at 5. CAFA provides the federal district courts with original jurisdiction over a class action if "the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (internal quotation marks omitted). Under certain circumstances, however, CAFA directs district courts to decline to exercise jurisdiction over an otherwise eligible case. *See* 28 U.S.C.A. § 1332(d)(4). One such set of circumstances is articulated in the local controversy exception. *Id.* at § 1332(d)(4)(A).

The local controversy exception is "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 962 (S.D.N.Y. 2014) (citation omitted). In other words, the local controversy exception is "intended to keep purely local matters and issues of particular state

---

[2] Defendants frame their challenge as jurisdictional and bring it under Federal Rule of Civil Procedure 12(b)(1). *See* ECF No. 52-1 at 4. However, the Second Circuit has indicated that the mandatory CAFA exceptions do not strip the federal courts of jurisdiction. *See Gold v. New York Life Ins. Co*., 730 F.3d 137, 141-42 (2d Cir. 2013). Rather, mandatory CAFA exceptions require that the courts decline to exercise their jurisdiction. *Id.* ("[T]he 'decline to exercise' language [in the CAFA home state controversy exception] inherently recognizes [that] the district court has subject matter jurisdiction but must actively decline to exercise it if the exception's requirements are met.") (other internal quotation marks omitted); *see also Demond Moore & Michael Kimmelman, P.C.*, No. 14-CV-8406, 2016 WL 8941200 (S.D.N.Y. Mar. 24, 2016) ("Because the same "shall decline to exercise" language is found in the local controversy exception of Section 1332(d)(4), it follows that the same result articulated in *Gold* applies here: the local controversy exception does not deprive me of subject matter jurisdiction over the matter, but rather directs that, even though I have jurisdiction under CAFA, I must decline to exercise it.").

concern in the state courts." *Id.* (citation omitted). To that end, the local controversy exception requires a district court to decline to exercise CAFA jurisdiction

> (i) over a class action in which—
>
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> >
> > (II) at least 1 defendant is a defendant—
> >
> > > (aa) from whom significant relief is sought by members of the plaintiff class;
> > >
> > > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> > >
> > > (cc) who is a citizen of the State in which the action was originally filed; and
> >
> > (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A). The only element of the local controversy exception that the parties in this case meaningfully dispute is the last—namely, the requirement that no other class action that asserts the same or similar factual allegations has been filed against any of the Defendants within the three years preceding the filing of this case.

In arguing that this case cannot satisfy the "no other class action" element, Plaintiffs point to *Spiro-Ruzhinskaya*. *See* ECF No. 56 at 4-8 (citing *Spiro v. HealthPort Tech. LLC*, 73 F. Supp. 3d 259 (S.D.N.Y. 2014)).[3] Plaintiffs argue that *Spiro-Ruzhinskaya* thwarts Defendants'

---

[3] As a point of clarity, *Spiro v. HealthPort Tech. LLC*, 73 F. Supp. 3d 259 (S.D.N.Y. 2014), refers to one of several decisions issued in what this Court refers to as *Spiro-Ruzhinskaya*. In *Spiro*, the court resolved a motion to

6

attempt to satisfy the "no other class action" element because it involves factual allegations similar to those at issue in this case, it was brought against Defendant CIOX Health (then known as HealthPort Technology, LLC), and it was filed within three years before Plaintiffs initiated this action. *See* ECF No. 56 at 4-8. Defendants offer two arguments in response. First, Defendants argue that *Spiro-Ruzhinskaya* does not involve the same or similar factual allegations. *See* ECF No. 52-1 at 8-10. Second, Defendants argue that, in any event, the instant case is not the sort of "genuinely national litigation" that congress intended to exclude from the local controversy exception. *See* ECF No. 57 at 5-8. As explained below, the Court agrees with Plaintiffs.

### a. Burden of Proof

As an initial matter, the Second Circuit has left open some questions regarding the burden of proving whether a CAFA exception applies. The court has not addressed who bears the burden, *see Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 240 (2d Cir. 2014) ("The Second Circuit has declined to reach the issue of who bears the burden with regard to CAFA exceptions."), or what level of proof the burden requires. *Ramirez v. Oscar De La Renta, LLC*, No. 16-CV-7855, 2017 WL 2062960, at *7 (S.D.N.Y. May 12, 2017) ("The Second Circuit has not resolved the level of proof required to establish an exception to CAFA jurisdiction.").

Despite the Second Circuit's silence, other circuit courts and district courts within this circuit have answered those questions nearly unanimously. According to the weight of the authority, the party seeking to invoke a CAFA exception bears the burden of proof. *See, e.g.*, *Evans v. Walter Indus.*, 449 F.3d 1159 (11th Cir. 2006); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007); *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 153 (3d Cir.

---

dismiss. 73 F. Supp. 3d at 278. In doing so, the court dismissed two of the named plaintiffs, including Spiro, with prejudice. *Id.* Following that decision, the case was renamed *Ruzhinskaya v. HealthPort Tech., LLC*.

2009); *see also Simmons v. Ambit Energy Holdings, LLC*, No. 13-CV-6240, 2014 WL 5026252, at *3 (S.D.N.Y. Sept. 30, 2014) ("The overwhelming weight of authority holds that . . . the part[y] who seek[s] to invoke the exception[] bear[s] the burden of proving . . . that the exception applies."). The party seeking to invoke the exception must prove by a preponderance of the evidence that the elements of the exception have been met. *See, e.g.*, *Davenport v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 388 (6th Cir. 2016) ("[E]very circuit to have addressed this issue [agrees] that the party seeking to remand under an exception to CAFA bears the burden of establishing each element of the exception by a preponderance of the evidence."); *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013); *Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013); *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (per curiam); *In re Sprint Next el Corp.*, 593 F.3d 669, 673 (7th Cir. 2010); *see also Ramirez*, 2017 WL 2062960, at *7 (noting the "emerging consensus" that a preponderance of the evidence standard applies). Accordingly, Defendants bear the burden of proving that this case satisfies the "no other class action" element of the local controversy exception by a preponderance of the evidence.

### b. The Same or Similar Factual Allegations

Defendants argue that this case satisfies the "no other class action" element because, although *Spiro-Ruzhinskaya* was filed against Defendant CIOX Health two months before Plaintiffs filed this case, it is not sufficiently similar. *See* ECF No. 52-1 at 8-9. In support of their argument, Defendants point to *Ruzhinskaya v. HealthPort Tech., LLC*, 311 F.R.D. 87 (S.D.N.Y. 2015), a decision resolving a motion for class certification in the *Spiro-Ruzhinskaya* action. There, the plaintiffs moved to certify a statewide class defined to include patients who requested medical records from New York healthcare providers. *Id.* at 91. The court denied the

8

plaintiffs' motion, finding the proposed class could not satisfy Rule 23(b)(3)'s predominance requirement because there were "significant variations among healthcare providers in New York with regard to the costs of retrieving, copying, and distributing medical records." *Id.* Defendants argue that because the *Spiro-Ruzhinskaya* court declined to certify a statewide class, and because the Plaintiffs here assert claims against defendants from a different region of the state, *Spiro-Ruzhinskaya* necessarily does not "assert the same or similar factual allegations" as this case. The Court disagrees.

The "no other class action" element of the local controversy exception requires that no other class action "asserting the same or similar factual allegations" has been filed against any of the defendants within the three years prior to the filing of the action at issue. 28 U.S.C. § 1332(d)(4)(A)(ii). There is no connection between this element of the local controversy exception and class certification. *Cf. Brook*, 2007 WL 2827808, at *4 (finding a class action with class members limited to citizens of one state was still sufficiently similar to a second action with class members limited to citizens of a different state); *see also Hart*, 967 F. Supp. 2d at 959-60 (treating a class action that was terminated before class certification was sought or granted as an "other class action" for the purposes of the local controversy exception). Further, the legislative history regarding this element of the exception indicates that, to be considered an "other class action" for the purposes of the local controversy exception, the purported plaintiff classes need not be the same:

> [T]he inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed. The inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects).

S. REP. NO. 109-14 at 41(2005).

A class action "asserting the same or similar factual allegations" was filed against Defendant CIOX Health two months before the instant action. The plaintiffs in *Spiro-Ruzhinskaya*, like the Plaintiffs here, made three allegations: violation of NYPHL, violation of NYGBL, and unjust enrichment. *Spiro*, 73 F. Supp. 3d at 264. Additionally, the facts are nearly interchangeable. In both cases, the plaintiffs requested medical records, Defendant CIOX Health (or as it was previously known, HealthPort Technologies, LLC) sent the plaintiffs an invoice charging $0.75 per page and $2.00 per request, the plaintiffs paid the charges and then received the records. *Id.* at 265-66.

The *Spiro-Ruzhinskaya* court found that because "the costs of responding to requests for records appear[ed] to differ substantially among [the defendant] providers," the proposed class could not satisfy Rule 23(b)(3)'s predominance requirement. *Ruzhinskaya*, 311 F.R.D. at 102-06. The court made no finding regarding CAFA jurisdiction. *Id*. Nor did the court discuss whether cases brought against various healthcare providers would be considered "other class actions" for the purposes of the local controversy exception. *Id.* Notably, the court did find that the proposed class satisfied Rule 23(a)'s commonality requirement. *Id.* at 98. In doing so, the court noted a litany of similarities among the members of the proposed class—including that HealthPort routinely billed $0.75 per page for medical records. *Id.*at 98. The bottom line is that the plain language of the "no other class action" element and the legislative history of the local controversy exception direct the Court to treat *Spiro-Ruzhinskaya* as an "other class action." The *Spiro-Ruzhinskaya* court's decision not to certify a statewide class does not advise otherwise. Accordingly, Defendants have not met their burden of demonstrating that "no other class action" asserting the same or similar factual allegations has been filed against any of the Defendants within three years before Plaintiffs initiated this action.

### c. Truly Local Controversy

Defendants next appeal to the purpose of the rule, arguing that this case is not the sort of "genuinely national litigation" that congress intended to exclude from the local controversy exception. ECF No. 57 at 5. Defendants assert that this is a "purely local" dispute—precisely the type of dispute that the local controversy exception aims to remand to state court. *Id.* The Court disagrees. Defendants' argument ignores the broader purposes of CAFA and overlooks the plain language of the statute.

Class action lawsuits are designed to allow persons, whose injuries are not large enough to outweigh the costs of litigating individually, to bind together to pursue their claims in a cost-effective manner. *See* S. REP. NO. 109-14 at 5. At the time that Congress passed CAFA, most class actions were adjudicated in state courts. *Id.* But a number of problems arose with state adjudication of class actions: (1) state courts inconsistently applied governing rules, (2) state courts inadequately supervised litigation procedures and class settlements, (3) plaintiffs brought similar cases in a number of different states courts, and (4) state courts issued rulings with nationwide implications. *Id.* at 5-6. Consequently, Congress crafted CAFA to expand federal jurisdiction over class actions. *Id.*

While expanding federal jurisdiction to cover most class actions, Congress sought to ensure that truly local matters remained within the jurisdiction of state courts. *Id.* at 6. To that end, Congress included the local controversy exception to CAFA jurisdiction. *Id.* at 28. The local controversy exception works to accomplish two goals. On one hand, the exception is intended to allow local courts to handle "truly local" controversies. *See* S. REP. NO. 109-14 at 38 ("This provision is intended to respond to concerns that class actions with a truly local focus should not be moved to federal court under this legislation because state courts have a strong

11

interest in adjudicating such disputes."). On the other hand, the exception prevents plaintiffs from evading federal jurisdiction in order to "wage national litigation" on a state-by-state basis. *See id.* at 38 ("At the same time, this is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole."). To accomplish the first goal, Congress requires that more than two-thirds of the proposed plaintiff class and at least one significant defendant are citizens of the state in which the action was filed. *See* 28 U.S.C. § 1332(d)(4)(A)(i). To accomplish the second goal, Congress included the "no other class action" element. *See* 28 U.S.C. § 1332(d)(4)(A)(ii).

The "no other class action" element requires that, for a case to be remanded under the local controversy exception, no similar class action has been filed against any of the defendants within three years before the filing of the action at issue. *See id.* Congress has made clear that this element was intended to prevent plaintiffs from using the local controversy exception to avoid federal jurisdiction, remand cases to state courts, and bring "copycat" class actions in various states across the country. S. REP. NO. 109–14 at 38-39; *see also Brook*, 2007 WL 2827808, at *4. Defendants argue that this case is not the sort of case that the "no other class action" element seeks to carve out from the local controversy exception because there is no risk that these Plaintiffs will attempt to bring copycat actions in multiple courts. *Id.* at 6-7. To be sure, that argument is not incorrect: Plaintiffs brought this action in federal court, and thus they are not attempting to evade federal jurisdiction. Indeed, it is the Defendants that seek to remand this case to state court. But the reason why Congress cares about "copycat" actions is that such cases undermine the balance of CAFA's goals. S. REP. NO. 109–14 at 38-39. At bottom, Congress intended to ensure that class actions are decided consistently, that they are adequately

12

supervised by the court, and that federal courts handle the decisions that have nationwide implications. This *is* the type of case that would benefit from those federal safeguards.

Further, although this is not precisely the sort of case Congress intended to *exclude* from the local controversy exception, this is also not precisely the sort of case Congress intended to *include* in the local controversy exception. Although Congress clearly intended the "no other class action" element of the local controversy exception to serve as a shield against abusive practices by plaintiffs and their attorneys, there is no indication that Congress intended it to serve as a sword for defendants to prevent federal courts from exercising jurisdiction. In fact, CAFA's language and legislative history indicate that the opposite is true: "CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Evans*, 449 F.3d at 1163 (quoting S. REP. NO. 109-14 at 42).

Moreover, this case is not quite as local as Defendants suggest. Congress intended the local controversy exception to capture only purely local disputes—those that "uniquely affect a particular locality to the exclusion of all others." *Vodenichar*, 733 F.3d at 508 n.11 (quoting 151 CONG. REC. H723-01 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner)). Although this case alleges violations of New York law, statutes regulating the price of medical records are not unique to the state of New York. *See, e.g.*, W.VA CODE § 16-29-1; MO. REV. STAT. § 191.227; OHIO REV. CODE ANN. § 1345.03. Indeed, similar class action lawsuits have been brought under these laws in various states across the country. *See, e.g.*, *Lagas v. Verisma Sys., Inc.*, No. 13-CV-1082 (W.D. Mo. Nov. 4, 2013); *Hamilton v. Raleigh Gen. Hosp., LLC*, No. 16-CV-10035, 2017 WL 833050 (S.D. W. Va. Mar. 2, 2017); *Scavio v. Smart Corp.*, No. 397-CV-

13

7209, 2001 WL 631326 (N.D. Ohio April 26, 2001). A ruling made under one state's statute may very well influence litigation brought under another state's statute. *See, e.g.*, *Wilson v. MRO Corp.*, No. 16-5279, 2017 WL 1534202, at *4 (S.D. W. Va. April 27, 2017) (relying cases brought under New York law to guide the court's decision on issues that arose in a case brought under West Virginia law). Accordingly, Defendants' reliance on the purpose of the local controversy exception is unavailing.

Finally, and most importantly, the question before the Court—whether *Spiro-Ruzhinskaya* is considered an "other class action" for CAFA purposes—is a question of statutory interpretation. As with all questions of statutory interpretation, the text of the statute controls. *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000). Here, the text of CAFA is clear. The local controversy exception does not apply unless "no other class action" asserting the same or similar factual allegations has been filed against any of the defendants within three years before the filing of the action at issue. 28 U.S.C. § 1332(d)(4)(A)(ii). This statute does not exclude class actions filed within the same state from the meaning of "no other class action." *See Davenport v. Lockwood, Andrews & Newman, Inc.*, No. 17-1200, 2017 U.S. App. LEXIS 7273, at *10 (6th Cir. April 25, 2017) (finding "other class action" to include class actions filed within a single state). The plain language is unambiguous: the Court retains jurisdiction.[4] On that basis, Defendants' request for remand is denied.

---

[4] Defendants attempt to analogize this case to *Moore v. IOD Inc.*, No. 14-CV-8406 (S.D.N.Y. March 24, 2016). *Moore* is another class action lawsuit that was filed against Defendant CIOX Health (CIOX Health was created after the merger of IOD Incorporated and HealthPort Technologies, LLC in 2015). *Id.* The court in *Moore* declined to exercise jurisdiction under the local controversy exception despite the fact that the *Spiro-Ruzhinskaya* action, which arguably asserted similar factual allegations, was filed several months earlier. *Id* at 5; *see also Spiro*, 73 F. Supp. 3d at 263. The existence of *Spiro-Ruzhinskaya* would seem to leave the "no other class action" element of the local controversy exception unsatisfied. *Moore*, No. 14-CV-8406 at *11. But the court in *Moore* limited its analysis to the elements of the local controversy exception that the parties disputed, and the parties did not dispute the "no other class action" element. *Id.* Therefore, the court considered only whether the conduct of the local defendant formed a significant basis for the claim asserted and whether the plaintiffs sought significant relief from the local defendant. *Id.* at *12. For that reason, *Moore* does not impact this Court's decision. *Cf. McCracken v.*

## II. Standing to Seek Injunctive Relief

Next, Defendants challenge Plaintiffs' standing to seek injunctive relief. ECF No. 52-1 at 10-11. To have standing to seek injunctive relief, a plaintiff must demonstrate a "real or immediate threat" of future injury. *See City of Loss Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). Past injuries may provide a basis to seek money damages, but they do not confer standing to seek injunctive relief. *See DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344-45 (2d Cir. 1998). To seek an injunction, a plaintiff must demonstrate both that harm is likely to occur in the future and that the plaintiff is likely to be exposed to that future harm. *See Baur v. Veneman*, 352 F.3d 625, 633-35, 640-42 (2d Cir. 2003) (finding the plaintiff had standing to seek an injunction to stop defendants from butchering non-ambulatory cows because plaintiff was a consumer of beef and therefore likely to be exposed to the future harm of plaintiff's enhanced risk of mad cow disease as a consumer of beef).

Defendants argue that Plaintiffs have not alleged that they will be harmed in the future. *Id.* at 11. In response, Plaintiffs argue that they are entitled to seek injunctive relief for three reasons. First, Plaintiffs argue that they are entitled to seek injunctive relief because NYGBL § 349 provides that "any person who has been injured" by a violation of the statute may seek "to enjoin such unlawful act or practice." ECF No. 56 at 8-9. Second, Plaintiffs argue that the Second Circuit has held that a plaintiff may seek injunctive relief if the alleged conduct was part of a practice or official policy. *Id.* at 9. Third, Plaintiffs argue that they have alleged a risk of future harm. ECF No. 56 at 8-9. The Court agrees with Defendants.

Plaintiffs have failed to plead facts sufficient to permit a plausible inference that they face a real or immediate threat of being wronged again. Plaintiff's insinuation that NYGBL § 349

---

*Verisma Sys., Inc.*, No. 14-CV-6248, at 15 (W.D.N.Y. May 15, 2017) (finding *Moore* inapplicable to the question of whether an action is considered an "other class action" for the purposes of the local controversy exception).

gives rise to a right to seek injunctive relief regardless of likelihood of future harm is baseless. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 564-65 (S.D.N.Y. 2016) (finding the plaintiff did not have standing to seek an injunction under NYBL § 349 because the plaintiff had not "demonstrated a likelihood of future harm"); *see also Spiro*, 73 F. Supp. 3d at 271 (same). Standing to seek injunctive relief, like standing to redress a past injury, is a Constitutional requirement. *Lyons*, 461 U.S. at 111-12. Article III sets a constitutional minimum, and New York law does not lower the constitutional bar.

Likewise, Plaintiffs' reliance on Second Circuit precedent is misplaced. Plaintiff invokes the rule from *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340 (2d Cir. 1998), to support the proposition that a plaintiff challenging acts conducted pursuant to a uniform practice or policy has standing to seek to enjoin that the practice or policy because there is a likelihood of it occurring again. *See* ECF No. 56 at 9 (citing *Maneely v. City of Newburgh*, 208 F.R.D. 69, 73 (S.D.N.Y. 2002) (citing *DeShawn*, 156 F.3d at 345)). In *DeShawn*, the Second Circuit did note that where challenged acts were conducted pursuant to an official policy, "there is a likelihood of recurring injury." *See DeShawn*, 156 F.3d at 345. But in addition to demonstrating that the challenged conduct was part of an official policy, the court required the plaintiffs to demonstrate that they were likely to be *subject to* that official policy. *See id.* at 343-45 (finding the plaintiffs had standing to seek injunctive relief because they had demonstrated both that "the challenged interrogation methods . . . [were] officially endorsed policies" and that the plaintiffs were "likely to suffer future interrogations" by the defendants); *see also Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) ("Although we noted in *Deshawn E.* that appellants were objecting to an official governmental policy, we did not in any way suggest that the existence of an official policy, on its own, is sufficient to confer standing to sue on any individual who had previously been subjected

to that policy."). Accordingly, in addition to alleging that the challenged conduct is part of a practice or policy, Plaintiffs must allege that they are likely to have another encounter with that practice or policy.

Plaintiffs have not alleged that they are likely to encounter the challenged practice or policy in the future. Plaintiffs allege that Defendants "continue to violate" the law by engaging in the challenged conduct. ECF No. 48 at ¶ 131. But Plaintiffs do not allege that they will be injured by that continued violation. Plaintiffs do not allege, for example, that they will request additional medical records from Defendants in the future. Plaintiffs do not even allege that they are still patients of Rochester General Hospital, Unity Hospital of Rochester, or F.F. Thompson Hospital. That plaintiffs have requested records multiple times in the past, *see* ECF No. 56 at 9 ("[The] risk of further harm to Plaintiffs is underscored by the fact that at least one of them has requested her medical records multiple times."), and thus could conceivably request records again in the future, is not enough. *See Spiro*, 73 F. Supp. 3d at 271 (noting that a plaintiff "conceivably may one day request medical records from [the] defendants" is not sufficient to demonstrate a likelihood of future harm).[5] Because Plaintiffs have failed to plead a plausible claim that they face a "real or immediate threat" of being "wronged again," they lack standing to seek injunctive relief. *Id.* Accordingly, their request for an injunction is dismissed.

### III. Statute of Limitations

---

[5] Plaintiffs attempt to distinguish *Spiro*. Plaintiffs note that the *Spiro* plaintiffs "effectively abandoned their claim for injunctive relief" by failing to respond to that portion of the defendants' motion to dismiss. ECF No. 56 at 10. On that basis, Plaintiffs argue that "the question of whether the plaintiffs in [*Spiro*] had standing to seek injunctive relief was not at issue." *Id.* Although Plaintiffs are right that the *Spiro* plaintiffs "unhelpfully failed to respond" to the defendants' motion to dismiss the request for injunctive relief, *Spiro*, 73 F. Supp. 3d at 271 n.8, the court reached the merits of the issue nonetheless. *Id.* at 271 (concluding that the plaintiffs failed "to plead a plausible claim that the named plaintiffs face[d] a 'real or immediate threat' of being 'wronged again'" and thus "lack[ed] standing to pursue their claim for injunctive relief"). Indeed, the court noted that it was deciding the merits of the injunction issue despite the plaintiff's failure to respond. *Id.* ("In any case, for the reasons stated above, the [First Amended Complaint], as pled, fails to allege facts that would establish plaintiffs' standing to pursue such relief.").

Because Plaintiff lacks standing to request injunctive relief, Plaintiffs' claims are subject to a three-year statute of limitations. Under New York law, a six-year statute of limitations applies to a claim of unjust enrichment where the plaintiff seeks equitable relief. *See Lia v. Saporito*, 909 F. Supp. 2d 149, 1687 (E.D.N.Y. 2012) ("In New York, unjust enrichment claims seeking equitable relief are governed by a six (6)-year statute of limitations."). But because Plaintiffs' request for injunctive relief has been dismissed, Plaintiffs' unjust enrichment claim is subject to a three-year statute of limitations. *Id.* ("[U]njust enrichment claims seeking monetary damages are governed by the three (3)-year statute of limitations under Section 214(3) of the New York Civil Practice Law and Rules."); *see also* CPLR § 214(2) (applying a three-year statute of limitations to "an action to recover upon a liability, penalty or forfeiture created or imposed by statute"); *Corsello v Verizon N.Y., Inc.*, 18 N.Y.3d 777, 788-89 (2012) (a claim under NYGBL § 349 is "subject to the three-year limitations period imposed by CPLR § 214(2)"). For that reason, Plaintiffs' claims predating May 20, 2011 are time-barred.

IV. **Voluntary Payment Doctrine**

Finally, Defendants argue that Plaintiffs' claims should be dismissed because Plaintiffs voluntarily paid $0.75 per page for their medical records. ECF No. 52-1 at 11. "The voluntary payment doctrine is a creature of common-law which bars 'recovery of payments voluntarily made with full knowledge of facts, and in the absence of fraud or mistake of material fact or law.'" *McCracken v. Verisma Sys., Inc.*, 131 F. Supp. 3d 38, 50 (W.D.N.Y. 2015) (quoting *Dillon v. U–A Columbia Cablevision of Westchester, Inc.,* 100 N.Y.2d 525, 526 (2003)). Where a plaintiff alleges that healthcare provider failed to disclose that their actual costs were below the amount charged for medical records, courts have refused to apply the voluntary payment doctrine

18

to dismiss claims under NYGBL § 349 and NYPHL § 18. *See, e.g.*, *id.*; *Spiro*, 73 F. Supp. 3d at 275.

Defendants attempt to distinguish this case on the basis that the Plaintiffs "voluntarily offered to pay $0.75 before the [D]efendants had even sent an invoice or a price quote." ECF No. 51-1 at 13. But that argument fails for two reasons. First, Defendants misrepresent the facts. When Plaintiffs wrote to the Defendant healthcare providers to request copies of their medical records, each offered to "promptly *reimburse* [Defendants] for any copying *expense* not exceeding 75 cents per page." ECF No. 20-3 (emphasis added). Plaintiffs did not offer to pay $0.75 per page; rather, Plaintiffs offered to return the costs Defendants incurred to produce the records. *Id.* Now, Plaintiffs allege that Defendants charged them more than their costs to produce the documents. *See* ECF No. 48. Assuming, as we must at the motion to dismiss stage, the truth of that allegation, Plaintiffs did not pay Defendants with full knowledge of the facts.

Second, when courts have refused to apply the voluntary payment doctrine in the context of excessive charges for medical records, they have done so precisely because the plaintiffs alleged that they did not know that the charge for the medical records exceeded the costs. *See, e.g.*, *Ruzhinskaya v. HealthPort Tech., LLC*, No. 14-CV-2921, 2015 WL 7308662, at *4 (S.D.N.Y. Nov. 19, 2015). ("That a patient may have parted with 75 cents per page—or subjectively believed such a charge reasonable—has no bearing on whether a provider violated § 18's ceiling by charging that sum, where the patient credibly alleges she did not have full knowledge of the facts, in particular the alleged fact that the HealthPort's charge exceeded its costs incurred.") (internal quotation marks omitted). That applies with equal force here. Accordingly, the Court denies Defendants' request to dismiss the complaint under the voluntary payment doctrine.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiffs' request for injunctive relief is dismissed, and a three-year statute of limitations applies to Plaintiffs' claims.

IT IS SO ORDERED.

Dated: May 26, 2017
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court