UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARISSA CARTER, EVELYN GRYS, BRUCE CURRIER, SHARON KONING, SUE BEEHLER, MARSHA MANCUSO, and JACLYN CUTHBERTSON, as individuals and as representatives of the classes,

                    Plaintiffs,

v.

CIOX HEALTH, LLC f/k/a HEALTHPORT TECHNOLOGIES, LLC, THE ROCHESTER GENERAL HOSPITAL, THE UNITY HOSPITAL OF ROCHESTER, and F.F. THOMPSON HOSPITAL, INC.,

                    Defendants.

Case No. 6:14–CV–06275-FPG

---

## CIOX HEALTH, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AND TO QUASH

**HODGSON RUSS LLP**
*Attorneys for CIOX Health, LLC*
Jodyann Galvin
Aaron M. Saykin
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000

## **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND........................................................................................................2

ARGUMENT..................................................................................................................................5

       I.      THE COURT SHOULD GRANT CIOX A PROTECTIVE
            ORDER PREVENTING PLAINTIFFS FROM CONDUCTING THE
            "APEX" DEPOSITION OF LORI REEL..................................................................6

       II.     THE COURT SHOULD GRANT CIOX A PROTECTIVE ORDER
            QUASHING THE TREROTOLA NOTICE AND SUBPOENA..........................10

CONCLUSION.............................................................................................................................14

## **PRELIMINARY STATEMENT**

Plaintiffs recently served CIOX Health, LLC ("CIOX") with a notice of deposition and subpoena for the deposition of CIOX's expert, Gregory Trerotola, months before the time for expert disclosure and a notice to take the "Apex" deposition of CIOX's Chief Accounting Officer, Lori Reel. Because CIOX and plaintiffs were unable to resolve their dispute about the timing of the Trerotola deposition and the propriety of the Reel deposition, CIOX seeks a protective order under Rule 26(c) of the Federal Rules of Civil Procedure: (1) postponing any deposition of Mr. Trerotola to be in the ordinary course of expert disclosure (which is at least several months from now); and (2) prohibiting Ms. Reel's "Apex" deposition.

Mr. Trerotola has no direct, firsthand knowledge of any facts related to CIOX's business. Mr. Trerotola's knowledge of the facts is limited to what he obtained through serving as a hired consultant and expert in litigation to which CIOX or its predecessor entities were parties. CIOX has retained Mr. Trerotola as an expert witness in this matter, and he is not prepared to offer expert conclusions or reports months before the deadline for expert disclosure and discovery. CIOX moves for a protective order quashing the Trerotola Subpoena and the Trerotola Notice, and preventing plaintiffs from deposing Mr. Trerotola at this time.

Ms. Reel does not have personal or unique knowledge of the relevant facts at issue in this case. Ms. Reel's only tangential involvement is her execution of certain agreements with Rochester General Hospital and the Unity Hospital of Rochester on behalf of CIOX. Declaration of Lori Reel, dated February 22, 2018 ("Reel Decl.") ¶¶ 5-6.[1] The Agreements do

---

[1] Ms. Reel did not execute the agreement with F.F. Thompson Hospital, Inc. Reel Decl. ¶ 7. The Thompson Agreement was executed on or about July 20, 2007, by a corporate representative authorized to bind CIOX's predecessor-in-interest, Smart Document

not set the prices for the release of information services CIOX provides to the hospitals, which is the precise issue in this litigation. Accordingly, CIOX requests that the Court enter a protective order barring plaintiffs from deposing Ms. Reel because other employees possess the information plaintiffs seek. Plaintiffs can obtain information concerning the relevant facts by far less intrusive means and without involving the time and resources of a high-level corporate executive.

## FACTUAL BACKGROUND

Plaintiffs filed their First Amended Class Action Complaint on July 18, 2016, asserting four causes of action related to fees charged in connection with CIOX fulfilling certain requests for medical records. Dkt. 48. On January 23, 2018, plaintiffs served:

(1) the Notice of Deposition of CIOX Pursuant to Fed. R. Civ. P. 30(b)(6);

(2) the Reel Notice;[2]

(3) the Trerotola Notice; and

(4) the Trerotola Subpoena.

Declaration of Jodyann Galvin, dated March 2, 2018 ("Galvin Decl.") ¶ 2 & Exs. B – E.

---

Solutions, LLC. *Id.* Ms. Reel did not execute the Thompson Agreement because it was executed before she assumed her role as Chief Accounting Officer for CIOX. *Id.* Rochester General Hospital, The Unity Hospital of Rochester, and F.F. Thompson Hospital, Inc. are referenced, collectively, as the "Hospital Defendants."

[2] All references to the Reel Notice and Exhibit C to the Galvin Declaration include both the original and amended deposition notices for Ms. Reel, served on January 23, 2018 and February 26, 2018, respectively. *See* Galvin Decl. ¶ 2 n.1.

**The Trerotola Notice and Subpoena**

Mr. Trerotola is a health care consultant. Declaration of Gregory Trerotola, dated March 2, 2018 ("Trerotola Decl.") ¶ 1. CIOX retained Mr. Trerotola as an expert witness in this matter. Trerotola Decl. ¶ 9; Galvin Decl. ¶ 4. Mr. Trerotola is not a CIOX employee. Trerotola Decl. ¶ 11. Accordingly, he has no direct, firsthand knowledge of CIOX's business or the relationship between CIOX and the Hospital Defendants and played no role in setting CIOX's pricing. *Id.* Mr. Trerotola's knowledge of CIOX is limited to what he obtained through serving as a hired consultant and expert witness in litigation to which CIOX or its predecessor entities were parties. *Id.* ¶¶ 10-11.

Mr. Trerotola's work in this case is in its early stages. Trerotola Decl. ¶ 9. Under the two scheduling orders that govern this matter, the deadline for defendants' expert disclosures is no earlier than October 3, 2018, and the deadline to complete expert discovery is no earlier than December 16, 2018. Galvin Decl. ¶¶ 5, 6 & Exs. G, H; *see* Trerotola Decl. ¶ 9. Mr. Trerotola is prepared to meet those deadlines, including appearing for a deposition, but he is not prepared to submit a report or offer any conclusions at this time. Trerotola Decl. ¶¶ 9, 13; Galvin Decl. ¶ 7.

**The Reel Notice**

In their 30(b)(6) Notice, plaintiffs identify for examination "CIOX's contracts with the [Hospital Defendants], including but not limited to the terms, drafting, negotiation, and amendment of those contracts." Galvin Decl., Ex. B ¶ 18. In the Reel Notice, however, plaintiffs do not identify any particular matters about which they wish to depose Ms. Reel. Galvin Decl., Ex. C. It appears that plaintiffs seek to depose Ms. Reel because she executed

3

certain Agreements applicable to the instant dispute with the Hospital Defendants.  Galvin Decl. ¶ 13 & Ex. L; Reel Decl. ¶¶ 5-7.

Ms. Reel serves as the Chief Accounting Officer for CIOX, which is a key officer of the company.  Reel Decl. ¶¶ 2-3.  As Chief Accounting Officer, Ms. Reel has authority to execute certain contracts, including the Agreements, and bind CIOX thereunder.  *Id.* ¶¶ 4-6.  Ms. Reel does not possess particular or unique knowledge about the specific terms or conditions contained in the Agreements she executed.  *Id.* ¶¶ 8, 9, 13.  She was not involved in drafting the Agreements or negotiating with the Hospital Defendants over the specific terms and conditions of the Agreements.  *Id.* ¶ 9.  Nor was Ms. Reel involved in the negotiation of the pricing, costs, and services associated with the release of information services CIOX provides to the Hospital Defendants.  *Id.* ¶¶ 10, 12.  Ms. Reel also did not participate in reviewing, editing, or finalizing the Agreements prior to execution.  *Id.* ¶ 11.

**CIOX's Good-Faith Effort to Resolve the Dispute**

On February 8, 2018, CIOX's counsel objected in writing to the Trerotola Subpoena and asked plaintiffs' counsel to withdraw the subpoena.  Galvin Decl. ¶ 15 & Ex. J. Plaintiffs' counsel responded to CIOX's objections to the Trerotola Subpoena on February 9.  *Id.* ¶ 16 & Ex. K.  On February 13, 2018, CIOX's counsel objected in writing to the Reel Notice, the location noticed for the Reel and 30(b)(6) depositions, and certain topics for examination in the 30(b)(6) Notice.[3]  Galvin Decl. ¶ 17 & Ex. L.  On February 15, 2018, CIOX's counsel

---

[3]  The 30(b)(6) objections are not at issue in this motion, though they may be raised in a separate motion if the parties cannot resolve their disagreement about the topics.  Galvin Decl. ¶ 17 n.3.  Also in the February 13 letter, CIOX disclosed Amy Creswell as its 30(b)(6) witness.  *Id.* ¶ 13 & Ex. L.

participated in a telephone conference with plaintiffs' counsel to discuss the objections CIOX set forth in its February 8 and 13 letters, in a good-faith attempt to resolve the disagreement without the Court's intervention. Galvin Decl. ¶¶ 14, 18. CIOX's counsel requested that plaintiffs' counsel withdraw the Reel Notice and the Trerotola Subpoena, but plaintiffs' counsel refused. *Id.* ¶ 18.

## ARGUMENT

Rule 26(c)(1) of the Federal Rules of Civil Procedure allows this Court to issue a protective order, where good cause is shown, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expenses" including prescribing a discovery method other than the one selected by the party seeking discovery. Fed. R. Civ. P. 26(c)(1)(C); *see also Alliance Indus., Inc. v. Longyear Holdings, Inc.*, 2010 WL 4323071, at *3 (W.D.N.Y. Mar. 19, 2010). "The appropriateness of a protective order is a balance of the litigation needs of the requesting party and the protectable interests of the party from whom discovery is sought." *Alliance*, 2010 WL 4323071, at *3.

A moving party is entitled to a protective order upon a showing that certain discovery is: (1) "cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"; or (2) "the burden or expense of the discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *See Roberts v. Los Alamos Nat'l Sec., LLC*, 2015 WL 7444636, at *2 (W.D.N.Y. Nov. 23, 2015) (citing *Pullano v. UBS/Paine Webber, Inc.*, No. 03-cv-6313, at 4 (W.D.N.Y. Mar. 21, 2007)) (barring deposition of

defendant's president and CEO because he lacked personal knowledge of the case and plaintiff had the opportunity to depose witnesses with knowledge of the matters at issue).

### I. THE COURT SHOULD GRANT CIOX A PROTECTIVE ORDER PREVENTING PLAINTIFFS FROM CONDUCTING THE "APEX" DEPOSITION OF LORI REEL

Under the "Apex doctrine," this Court and the other courts in this Circuit have regularly restricted parties from deposing high-ranking corporate official because, by virtue of their position, they are more vulnerable to repetitive, harassing, and abusive depositions and, therefore, need some measure of protection from the courts. *See Roberts*, 2015 WL 7444636, at *2. One leading commentator further explained as follows:

> [C]ourts often are reluctant to permit "apex" depositions of highest-level corporate officers or managers who are unlikely to have personal knowledge of the facts sought by the opposing party. If the deponent is a high level corporate officer who certifies that he or she has no personal knowledge of the facts, the Court may grant a protective order requiring the opposing party to first seek discovery through less intrusive means, *e.g.*, from lower level employees who are more likely to have direct knowledge.

Moore's Federal Practice 3d, § 26.105(2)(a); *see also Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 714 (S.D.N.Y. 2013) (barring the deposition of the University Chancellor, who affirmed by affidavit that he had no personal knowledge of the litigation); *Diesel Props S.R.L. v. Greystone Bus. Credit II LLC*, 2008 WL 5099957, at *1 (S.D.N.Y. Dec. 3, 2008) (explaining that "senior executives should only be deposed if they possess unique personal knowledge related to the relevant issues in the case"); *Burns v. Bank of Am.*, 2007 WL 1589437, at *5-*6 (S.D.N.Y. June 4, 2007) (barring plaintiffs' attempt to depose defendant's general counsel because, among other reasons, plaintiffs did not seek to question lower level corporate officials before attempting to depose a high-level corporate executive); *Harris v. Comput. Assocs. Int'l, Inc.*, 204 F.R.D. 44,

45-47 (E.D.N.Y. 2001) ("When a vice president can contribute nothing more than a lower level employee, good cause is shown to not take the deposition."). So long as the party seeking a protective order can "demonstrate that a proposed senior-official deponent has no personal or unique knowledge of the relevant facts, courts in this Circuit *agree that the party may obtain that order*." *Roberts*, 2015 WL 7444636, at *2 (entering a protective order barring the deposition of the high-ranking deponent because the defendant demonstrated that the deponent had no unique or personal knowledge of the relevant facts) (emphasis added).

This Court's analysis in *Roberts* is particularly illustrative. There, the plaintiff sought to depose the university's vice president regarding the interpretation and implementation of a particular policy because the plaintiff believed this vice president "was in charge of implementing and promulgating" the policy. *Roberts*, 2015 WL 7444636, at *3. But the defendants made clear that the vice president "neither wrote nor interpreted" the policy and "merely signed off on" the policy on behalf of the university. *Id.* Therefore, this Court barred plaintiff from deposing the vice president on this issue and explained:

> This is precisely the sort of deposition that the "Apex" deposition rule is designed to prohibit: one used as a form of leverage or harassment that forces senior officials to spend time in preparing for and attending a deposition when they have no little or no pertinent testimony to offer.

*Id.* (internal quotations, alterations, and citations omitted).

Plaintiffs here allege that CIOX, along with the Hospital Defendants, violated N.Y. Public Health Law § 18 by charging plaintiffs more than the actual costs incurred for producing certain copies of requested medical records. *See generally* First Am. Compl. (Dkt. 48). Plaintiffs allege that CIOX "has contracts with the [Hospital Defendants] . . . to (a) respond

7

to requests for medical records, and (b) produce such records to patients and other qualified persons." *Id.* ¶ 27.  Plaintiffs further allege that CIOX "obtained these contract by offering improper kickbacks to the [Hospital Defendants] . . . in connection with revenues associated with charges for medical records." *Id.* ¶ 28.

Discovery is underway, and plaintiffs seek to depose CIOX's 30(b)(6) designee to discuss, among other things, "CIOX's contracts with the [Hospital Defendants], including but not limited to the terms, drafting, negotiation, and amendment of those contracts."  Galvin Decl., Ex. B ¶ 18.  Plaintiffs also seek to depose Ms. Reel — CIOX's Chief Accounting Officer — presumably solely because Ms. Reel executed the Agreements with the Hospital Defendants on behalf of CIOX.  Reel Decl. ¶¶ 4-6; Galvin Decl. ¶ 13 & Ex. C.  But, as evidenced by the fact that CIOX ***did not identify*** Ms. Reel in its initial disclosures as an "individual likely to have discoverable information[,]" Ms. Reel does not have any unique or personal knowledge related to those Agreements.  Galvin Decl. ¶ 12 & Ex. I; Reel Decl. ¶ 8.  Plaintiffs' counsel identified Ms. Reel only after reviewing the Agreements between CIOX and the Hospital Defendants.

Though she executed certain Agreements with the Hospital Defendants in her capacity as Chief Accounting Officer, Ms. Reel does not have any unique or personal knowledge of the relevant facts in this case.  Reel Decl. ¶¶ 8, 13.  Specifically, Ms. Reel: (i) did not draft the Agreements; (ii) was not involved in negotiating with the Hospital Defendants over the specific terms and conditions of the Agreements; (iii) was not involved in the negotiation of the pricing, costs, and services associated with the release of information services CIOX provides to the Hospital Defendants; and (iv) did not participate in reviewing, revising, editing, or finalizing the Agreements prior to execution.  *Id.* ¶¶ 9-13.  Ms. Reel cannot provide any meaningful testimony

8

concerning CIOX's contractual relationship with the Hospital Defendants and the release of information services it provides the Hospital Defendants.

Instead, CIOX's 30(b)(6) witness, Amy Creswell, will have knowledge of, among other things, "CIOX's contracts with the [Hospital Defendants], including but not limited to the terms, drafting, negotiation, and amendment of those contracts." Galvin Decl. ¶ 13 & Ex. B ¶ 18. Ms. Creswell's deposition currently is scheduled for April 12, 2018, and CIOX's counsel specifically informed plaintiffs' counsel that Ms. Creswell would be prepared to discuss CIOX's contracts with the Hospital Defendants. Galvin Decl. ¶ 13. Plaintiffs' counsel insisted that such testimony from CIOX's corporate representative would be improper. *Id.* But plaintiffs' counsel's misunderstanding of Rule 30(b)(6) does not allow plaintiffs to depose a high-ranking corporate officer.

Moreover, and also fatal to their attempt to depose Ms. Reel, plaintiffs have not sought to depose any lower-level corporate officials who may have knowledge of CIOX's contractual relationship with the Hospital Defendants. In accordance with well-established precedent, this Court should enter an order quashing the Reel Notice and prohibiting plaintiffs from deposing Ms. Reel at this time. *See Alex & Ani, Inc. v. MOA Int'l Corp.*, 2011 WL 6413612, at *5 (S.D.N.Y. Dec. 21, 2011) (explaining that, after a senior executive files a declaration disclaiming direct or personal knowledge, delaying any deposition of the senior executive until after a 30(b)(6) deposition and then allowing the executive's deposition "only if [the 30(b)(6)] deposition gives rise to subject matter of which [the executive] has personal knowledge" is "precisely the process that the case law contemplates"); *see also Roberts*, 2015 WL 7444636; *Alliance*, 2010 WL 4323071.

9

## II. THE COURT SHOULD GRANT CIOX A PROTECTIVE ORDER QUASHING THE TREROTOLA NOTICE AND SUBPOENA

CIOX's motion with respect to Mr. Trerotola is very narrow. CIOX seeks only to have Mr. Trerotola's deposition held in accordance with the expert disclosure deadlines in this case and avoid unnecessary expense of having its expert deposed twice.

Rule 26 of the Federal Rules of Civil Procedure governs the timing of expert disclosure. Under Rule 26(b), a party "may depose any person who has been identified as an expert whose opinions may be presented at trial," and, if the expert is one who must provide a report, "the deposition may be conducted ***only after the report is provided***." Fed. R. Civ. P. 26(b)(4)(A) (emphasis added). A party may not use a subpoena to depose an expert who has not yet been disclosed under Rule 26(a)(2) "to obtain broader or earlier disclosure of potential trial witnesses . . . than is thus available to them here under the rule." *Chevron Corp. v. Donziger*, 2012 WL 6634680, at *4 (S.D.N.Y. Dec. 19, 2012) (granting protective order regarding subpoena to not-yet-disclosed experts, and explaining that, "in the event that Chevron ultimately identifies experts to offer testimony for [the] purpose [described in the subpoena], . . . the [subpoenaing party] would be entitled to discovery under Fed.R.Civ.P. 26(a)(2)").

Moreover, courts quash subpoenas served on individuals who have no relevant factual testimony to offer because such subpoenas "unreasonably create an undue or oppressive burden" on the subpoenaed individual. *Brown v. City of Syracuse*, 648 F. Supp. 2d 461, 466 (N.D.N.Y. 2009); *see also Ackermann v. N.Y. City Dep't of Info. Tech. & Telecomms.*, 2010 WL 1172625, at *1 (S.D.N.Y. Mar. 24, 2010) (quashing subpoena where subpoenaed individual "state[d] that he ha[d] no personal knowledge of plaintiff's claim").

Courts also may quash a subpoena that seeks privileged matter prepared in unrelated litigation. *See Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527-28 (2d Cir. 1989). Although parties must produce a list of cases in which their experts testified as part of their expert disclosures, Rule 26 does not require production of the reports underlying that testimony, regardless of whether the litigation was related. *Surles v. Air France*, 2001 WL 815522, at *6-*7 (S.D.N.Y. July 19, 2001). Claims that reports prepared in connection with prior litigation are relevant for impeachment purposes do not allow a party to obtain those reports during discovery. *Trunk v. Midwest Rubber & Supply Co.*, 175 F.R.D. 664, 664 (D. Colo. 1997) ("[T]he court finds that conclusions and opinions offered in unrelated litigation . . . would unnecessarily burden litigation with pre-trial inquiry into facts and issues wholly irrelevant to the case at hand. Defendants' general contention that they are entitled to develop material to be used during cross-examination does not convince this court to articulate a new general rule favoring burdensome production and deposition.") (internal quotations and citations omitted).

The Court entered two scheduling orders in this case, which govern discovery and other deadlines. Galvin Decl. ¶ 5 & Exs. G, H. The deadline for CIOX to disclose its experts, including any expert reports required under Rule 26(a)(2)(B), is no earlier than October 3, 2018. Galvin Decl. ¶ 6 & Ex. G. Under Rule 26(b), plaintiffs may depose any CIOX experts only after such reports are disclosed — in other words, no earlier than October 3, 2018. But the Trerotola Notice and Trerotola Subpoena designate March 28, 2018 for Mr. Trerotola's deposition. Galvin Decl., Exs. D, E; *see* Trerotola Decl. ¶ 3. In an effort to reconcile the Trerotola Notice and Subpoena with Rule 26 and the Court's schedule, plaintiffs vaguely claim they want to depose Mr. Trerotola on March 28 "as a fact witness." *See* Galvin Decl., Ex. K. By seeking to depose

11

Mr. Trerotola as a purported "fact witness," plaintiffs attempt to turn on its head this Court's plaintiffs-first expert disclosure — which, notably, plaintiffs agreed to — so plaintiffs' expert will know defendants' position well before plaintiffs' expert disclosure deadline. *Id.* ¶ 8. That is not how it works. Plaintiffs have not claimed, either in connection with this dispute or when negotiating the Scheduling Order, that Mr. Trerotola's or any CIOX expert's testimony is relevant to their motion for class certification, which is due on April 30, 2018. *Id.* ¶¶ 8, 9 & Ex. H.

Unsurprisingly, plaintiffs' attempt to upset the ordinary course of expert discovery and the schedule set by this Court would be duplicative and wasteful. Plaintiffs confirmed that they would seek to depose Mr. Trerotola twice — once as a "fact witness" and again during expert discovery. Galvin Decl. ¶ 11; *see* Trerotola Decl. ¶ 12. Multiple depositions of Mr. Trerotola would result in unnecessary duplication of efforts and additional expense to all involved and, particularly, to CIOX. Galvin Decl. ¶ 11; *see* Trerotola Decl. ¶ 12. Such duplication is unnecessary because Mr. Trerotola has no direct, firsthand knowledge of the relevant facts at issue. Trerotola Decl. ¶ 11; *see* Galvin Decl. ¶ 8 & Ex. J. He is not a CIOX employee, so all knowledge he has of CIOX's business was obtained through interviews with CIOX employees and examination of CIOX's records, in his role as a hired consultant or an expert witness in litigation to which CIOX or its predecessor entities were parties. Trerotola Decl. ¶ 11. Thus, the Court should quash this subpoena and deposition notice as premature and an improper attempt to circumvent the ordinary course of discovery set forth both Rule 26 and this Court's Scheduling Order.

Any documents Mr. Trerotola might possess related to the demand in the subpoena were prepared in connection with his role as a hired consultant or an expert in separate

12

litigation, and he relied on them in his role as an expert. *See* Trerotola Decl. ¶¶ 4-9. Plaintiffs' counsel suggests that the documents referenced in his February 9 letter were created in the ordinary course of Mr. Trerotola's business, and not in connection with his work as an expert for purposes of litigation. *See* Galvin Decl., Ex. K. The issues in this case are what happens in the course of **CIOX's** business, not Mr. Trerotola's. Mr. Trerotola explained that he obtained all of the information he has about CIOX's business from interviews and examinations performed in the context of his work as a hired consultant and expert witness. Trerotola Decl. ¶ 11. Thus, plaintiffs are not entitled to receive those reports — even in the ordinary course of expert discovery. Requiring Mr. Trerotola to produce such reports and appear for deposition on the matters contained within them would "favor[] burdensome production and deposition." *See Trunk*, 175 F.R.D. at 664 (internal quotations and citation omitted).

13

## **CONCLUSION**

For the foregoing reasons, CIOX respectfully requests that this Court enter a protective order: (1) directing that plaintiffs take the deposition of CIOX expert Gregory Trerotola in the ordinary course of expert discovery after this expert disclosure is made and in accordance with case deadlines — not during fact discovery; and (2) barring the deposition of Lori Reel, CIOX's Chief Accounting Officer.

Dated: March 2, 2018

           **HODGSON RUSS LLP**
           *Attorneys for CIOX Health, LLC*


           By:    s/Jodyann Galvin
                   Jodyann Galvin
                   Aaron M. Saykin
           The Guaranty Building
           140 Pearl Street, Suite 100
           Buffalo, New York 14202
           Telephone: (716) 856-4000
           *jgalvin@hodgsonruss.com*
           *asaykin@hodgsonruss.com*